UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
10-23960-CIV-HOEVELER

JULIO A. MENDEZ,

    Plaintiff,

v.

STATE OF FLORIDA, a sovereign;
MIAMI DADE COUNTY, a division
of the sovereign; and MIAMI
DADE COUNTY CORRECTIONS AND
REHABILITATION DEPARTMENT,

    Defendants.
_____/

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

BEFORE the Court is the defendants' motion to dismiss the plaintiff's complaint under Rule 12(b)(6) of the Federal Rules. The motion is fully briefed and ready for a decision. For the reason that follow, the motion to dismiss is granted.

### Background

This is a case of a prisoner suing his jailers for failing to protect against inmate-on-inmate violence inside the prison. Julio Mendez filed the action in state court October 13, 2010, naming as defendants the State of Florida and Miami Dade County.[1] The

---

[1] In the complaint, the plaintiff also named Miami Dade County Corrections and Rehabilitation Department ("CRD") as a defendant. The defendants move to dismiss CRD [ECF No. 4] because it is merely a department of Miami Dade County and does not have the capacity to be sued. The motion to dismiss is granted, and CRD is dismissed, with prejudice.

defendants removed the case November 2, 2010 because of the federal-law ingredient in Count II (the § 1983 claim).

In the two-count complaint, Mr. Mendez asserts one state-law negligence claim against all defendants (Count I), and one 42 U.S.C. § 1983 claim against all defendants (Count II). Both claims allege (in rather abstract terms) that the defendants failed to protect Mr. Mendez from prison violence. He claims the "defendants permitted a battery of defendant [sic] while incarcerated at the Metro West Correction Facility," which resulted in a permanent injury. Pl.'s Am. Compl. ¶ 5, ECF No. 1-2. The factual allegations in Count I are:

> 8. Defendant was repeatedly beaten by other inmates over days.
> 9. Defendant repeatedly asked for protection.
> 10. The protection was denied with the last beating taking place on or about April 20, 2005.
> 11. Defendant suffered permanent injury as a result of the failure to properly monitor the inmate population to his repeated requests for protection.

Id. at ¶¶ 8-11. The § 1983 allegations in Count II are even leaner, with Mr. Mendez asserting only that:

> 13. The [defendants'] failure to properly supervise the other inmates despite repeated requests constitutes a violation of plaintiffs [sic] constitutional rights including but not limited to the 8th and 14th amendment [sic] of the U.S. Constitution.

Id. at ¶ 13.

On November 24, 2010, the defendants moved for 12(b)(6)

2

dismissal of the whole complaint, arguing that the plaintiff's state-law claims in Count I, and federal civil rights claims in Count II, all fail as a matter of law.

## I. Motion to dismiss standard

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Though the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." Id. Echoing the Supreme Court's holding in Twombly, the Eleventh Circuit has written that, "a complaint requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Corbitt v. Home Depot U.S.A., Inc., 589 F.3d 1136, 1170 (11th Cir. 2009) (internal quotes omitted). "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted). "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

The Eleventh Circuit recently expressed that the standard for assessing a motion to dismiss in a § 1983 case is the same, since "whatever requirements our heightened pleading standard once

imposed have since been replaced by those of the Twombly-Iqbal plausibility standard." Randall v. Scott, 610 F.3d 701, 707 n. 2 (11th Cir. 2010). The panel wrote that, "[a]fter Iqbal, it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." Id. at 710.

## II. Sovereign immunity

### A.

The defendants submit that Mr. Mendez's negligence claim in Count I fails for two reasons. First, they point out that sovereign immunity shields the State of Florida and its subdivisions from liability stemming from activities classified as "discretionary functions." They argue that the implementation and enforcement of prison safety procedures counts as a "discretionary function" to which sovereign immunity applies. Second, even if sovereign immunity does not apply, the defendants argue they are shielded from tort liability because of Florida's waiver of sovereign immunity statute, Fla. Stat. § 768.28, which allows a plaintiff to sue a government employer only when the plaintiff's injuries were caused by a *negligent* government employee; not for injuries caused by a *reckless and malicious* government employee. The defendants contend that the plaintiff's theory in Count I (*e.g.*, that correctional officers ignored his repeated requests for protection) necessarily implies that the responsible prison guards were acting with "wanton and willful disregard of human rights, safety, or

property," see Fla. Stat. § 768.28(9)(a), and, therefore, the defendants only recourse is to sue the responsible employees themselves.

**B.**

A number of courts have considered whether the various acts or omissions by prison officials should be considered "discretionary functions" to which sovereign immunity applies, or, conversely, "operational functions" which can serve as the basis for a tort lawsuit. For example, in Dunagan v. Seely, 533 So. 2d 867, 868 (1st DCA 1988), the Florida appellate court considered the case of a detainee who was savagely attacked by a fellow inmate in county jail. The Dunagan court held that sovereign immunity did not apply to the plaintiff's tort lawsuit because the plaintiff's complaint included specific allegations that prison officials violated pre-existing safety procedures. The court emphasized that the plaintiff's complaint:

> does not hinge upon allegations of negligence at the planning level, such as in the classification of prisoners or in the policies adopted for their supervision. Here, one allegation is the negligent failure of [the County's] agents to *follow* the planning-level decision to maintain locked cell doors except for five minutes every half hour. That allegedly negligent activity must be classified as an operational-level activity, to which sovereign immunity does not attach.

Id. (emphasis in original). In other cases, Florida courts have found that the alleged misconduct of prison officials fell on the other side of the discretionary-vs.-operational function divide.

5

See <u>Davis v. State, Department of Corrections</u>, 460 So. 2d 452 (Fla. 1st DCA 1984) (determinations about prisoner placement and number of supervisory personnel needed to safely maintain prison are discretionary functions protected by sovereign immunity).

In his complaint, Mr. Mendez alleges the defendants "fail[ed] to properly monitor the inmate population." Notably, the plaintiff does not explain whether the defendant's alleged negligence was a failure to follow its own pre-existing procedures for monitoring prisoners, or simply a more fundamental failure to implement "better" safety procedures to begin with.[2] Additionally, Mr. Mendez alleges the defendants "permitted a battery"--namely, denying his request for protection and allowing him to be "repeatedly beaten by other inmates over days." Yet there are no details about how Mr. Mendez registered his request for protection, or to whom, or on what basis he sought protection. These allegations are important. On the whole, the County's broad policy determinations about how to house, segregate, and monitor inmates--and how to assess and deal with inherent prison risks--tend to affect all prisoners about the same. The County's agents need not reassess the wisdom of these "planning-level" decisions each time a detainee asks for more private quarters or lodges a generic complaint about the penitentiary lifestyle. On the other hand, the more detailed and

---

[2] Considering Mr. Mendez has not named any individual defendants--and also that his theory in Count II is specifically that the defendants maintain an unconstitutional policy for prisoner supervision--it seems likely his tort theory in Count I pertains to activities that are discretionary functions.

6

particularized a prisoner's complaint about a dangerous prison condition--*e.g.*, if he identifies a legitimate security risk that affects him differently from other prisoners--the more likely it is that a prison official acts in an "operational capacity" by ignoring such a complaint. This is simply because, as a practical matter, once the inmate properly presents a *bono fide* case for individualized protection from specific danger, his request is then (presumably) governed by a separate set of "planning-level" policies and procedures for dealing with such requests.[3] Indeed, failure on the part of prison officials to determine whether an inmate's safety concern is legitimate may itself equate with what the Dunagan court characterized as "negligent failure of [the County's] agents to *follow* the planning-level decision. . . . [which] must be classified as an operational-level activity, to which sovereign immunity does not attach." Dunagan, 533 So. 2d at 868.

In the present case, however, the plaintiff's minimal factual allegations in Count I are too abstract for the Court to conclude the defendants' failed to follow planning-level decisions about prisoner supervision. Put differently, the plaintiff has not shown his injuries were caused by state action undertaken in an operational capacity. The plaintiff may amend his complaint within

---

[3] The Court assumes Metro West has policies for addressing case-by-case security risks. This is a fair assumption, since absent some kind of institutional mechanism for dealing with individualized concerns, the County would run the risk of liability under § 1983.

7

twenty days to include factual allegations to overcome sovereign immunity. The Court does not reach the alternative argument concerning the application of § 768.28(9).

### III. Qualified immunity

A plaintiff pursuing relief under § 1983 from municipalities and/or "official-capacity defendants" must demonstrate that the deprivation of a constitutional right was caused by: (1) an action taken or policy made by an official responsible for making final policy in that area; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker. Church v. City of Huntsville, 30 F.3d 1332, 1343 (11th Cir. 1994). Thus, a § 1983 action also requires proof of an affirmative causal connection between a policymaker's acts or omissions, and the alleged constitutional deprivations. Bailey v. Board of County Commissioners of Alachua County, 956 F.2d 1112 (11th Cir.), cert. denied, 506 U.S. 832 (1992). Like complaints in all other civil cases, "complaints in § 1983 cases must now 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Randall v. Scott, 610 F.3d 701, 708 (11th Cir. 2010) (quoting Bryson v. Gonzales, 534 F.3d 1282 (10th Cir. 2008)). In particular, unless the plaintiff alleges (with facts) a violation of established law, a defendant invoking qualified immunity is entitled to dismissal before the commencement of discovery. Mitchell v. Forsyth, 472 U.S. 511, 526

(1985).

As always, in considering a motion to dismiss the Court must first eliminate any allegations in the complaint that are merely legal conclusions; next, where there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. See American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010). In actual substance, Count II is one sentence long. Separating the plaintiff's legal conclusions from his factual allegations, the score is one legal conclusion to zero factual allegations. The plaintiff is entitled amend his complaint within twenty days of this order, alleging factual material to overcome the defendants' qualified immunity. Accordingly, it is hereby

**ORDERED AND ADJUDGED:** The defendants' motion to dismiss is granted. The plaintiff may file an amended complaint within twenty days from the date of this order, otherwise the case will be dismissed.

**DONE AND ORDERED** in Miami, Florida, February 8, 2011.

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE